Good morning, Your Honors. Alana Rotter for the Appellant Officers. I'm going to endeavor to reserve three minutes for rebuttal. The Supreme Court made clear recently in the Wesby case that in a Fourth Amendment qualified immunity case, the plaintiff has a high bar. We must identify a case that obviously resolves whether the circumstances with which the particular officer was confronted constituted probable cause. The court also explained that this standard applies in the probable cause context because probable cause turns on the probabilities in particular factual contexts and can't be reduced to a neat set of legal rules. This is consistent with the drumbeat of cases from the Supreme Court in recent years on qualified immunity, emphasizing over and over again that the clearly established prong requires a case very, very closely on points. We're stuck here with the holding that there was no probable cause, correct? Possibly, although Wesby came down after the prior decision in this case. It's still the existence or non-existence of probable cause, it seems to me, because it is fact-specific, can't really be altered by Wesby, can it? Possibly because Wesby explains the standards for probable cause, which could cause a reassessment, but I don't think we have to go there. I think we can focus on the second prong of whether it was clearly established, because if there's any question about whether there was probable cause or this panel were to doubt the conclusion of the prior panel, that would just illustrate further that it was not clearly established, because the clearly established standard requires obviousness under Wesby and under Casella and Emmons and all the other recent Supreme Court cases. And so to the extent that there's any question that any reasonable judge, any reasonable officer could possibly have thought that there was probable cause here, we don't hit the clearly established bar. Well, the question is, is it reasonable? I mean, first I would ask, how is this case different from Kennedy v. the L.A. Police Department, where the defendant was holding the former roommate's property, and there was, you know, I mean, there's no basis to believe that she intended to permanently deprive her of her property, and that seems to me, you know, pretty clear. I would argue that in Kennedy, there was no credibility issue for the officers to resolve. Both of the roommates agreed that that's what was going on. And so you have on its face, arguably, a civil dispute. You know, the facts also are not similar in that here, of course, the plaintiffs had put a mattress worth $3,000 in their cart and driven off from the rehab center after being asked. But they brought it back. They brought it back after the police got involved, and the question is, what was their intent? They took the mattress. They told the nurse they were taking it because they had rented it. So how was that theft? If they were going to steal it, they would have gone out the back door with it and not told her, right? That was their intent. Maybe, but the police again are confronted with two stories here. One story is the plaintiff's story, we have permission to take it, so we're taking it. And one story is, they do not have So in that scenario, they are lying about having permission. The officers are entitled to believe that. Wesby says that an innocent explanation does not vitiate probable cause or have any kind of automatic effect. That's why I'm having difficulty with this. To me, the law of the case is that there was lacking, there was no probable cause. I'm not sure I would have reached that result, but in my view, that's where we are. So to me, I'm more interested in how we determine whether the lack of probable cause in that situation is clearly established. And I know Alan says if it's civil, you don't have probable cause, but I'm not sure what distinguishes civil from criminal in this context. If you have a rental car and you keep it beyond the time, you know, that's certainly a rental dispute. And if it's, you know, two days, maybe it becomes criminal. I mean, I don't know where to draw that line. And I don't know where the cases draw the line. And I'm with you there. I don't think that there is a bright line. And I think the Bell case that we discussed in the briefing about renting an apartment and not paying the rent on it, being theft under California law, I think further blurs the distinction. The fact that there's a contract somewhere in the background does not automatically mean there's not going to be any criminal probable cause anywhere, no matter what happens in the case. So Alan is overbroad in that statement. I'm just not quite sure why we're here again. This doesn't seem to be a case of gigantic proportions. And once it went back, I'm not understanding why we haven't settled this a long time ago. There were mediation efforts and the parties were too far apart in their demands, is the simple answer to that. But going back to Judge Graber's point, even if we treated the prior determination as law of the case, and again, I'm not sure that's correct in light of Wesby's probable cause standards. But even if we're going to treat it as law of the case, the fact that a finding that there was probable cause cannot possibly irrevocably mean that it was clearly established. Otherwise, there would be no reason for the second prong of qualified immunity. The question is, is it within the realm of a reasonable mistake? Was there room for a different opinion? And here, the fact that Judge Vea thought that there was probable cause, that the magistrate judge initially thought that there was probable cause, that you've questioned whether you would have reached the same result. This is a blurry case. And the case law is that where there is a unique set of facts and circumstances, that's an important indication that the law is not clearly established. That's in White v. Pauley. This is a strange set of facts. People don't usually throw a $3,000 mattress in the back of their car and drive away instead of waiting a few minutes to try to resolve a situation. That the police were entitled to believe that plaintiffs did not have a good faith belief in their right to take the mattress. And once they're taking the mattress without permission, we don't know what they're going to do with it, whether they're going to continue to pay rent, whether this is a case like taking the rental car and keeping it, whether this is a case like renting the apartment and then not paying. Is this still a crime if they brought it back? Assuming what you say. Yes, Your Honor. Is this something the police should be involved in? Your brief ends up relying on this no transfer provision in the lease, but I mean, doesn't that make it literally a contract dispute? Right. Well, but again, as Judge Graber pointed out, if you take something and then you exceed the terms of what the agreement was, you now have it without the permission of the owner. And that is a crime to be said. Well, we don't know. There's clearly a dispute over whether he had a right to possess that mattress. Sure. But which is kind of quintessentially a contractual civil kind of dispute that can bleed over into criminal if they're taking property which is not theirs. And the fact that the line may be fuzzy as to when it bleeds over into criminal would again be an indication. So here's my lease. Here's my rental agreement. Why does that somehow not negate any possible criminal intent? I want to make sure to answer you. I also am trying to save a couple of minutes for rebuttal, so I will do my best here. But to answer your prior question about once they brought it back, doesn't that mean no theft? The question was when they drove off with that mattress, what were they intending to do? So the fact that they brought it back can't change what their intent was in the moment when they took it would be my answer. And again, the fact that there's a lease in the back, a contract in the background cannot inexorably mean, there's no case that says inexorably means that there can't be criminal intent even on the facts here. And under Wesby, we have to have a case that obviously resolves whether the circumstances which the particular officer confronted constituted probable cause and a case that squarely governed the specific facts of this case. I would submit that Kennedy, Allen don't meet that bar. I'm going to try to reserve a little bit of time I have left for rebuttal. You may. Thank you. May it please the court, Brent and Adrian Hans on behalf of Plaintiff Nichols. So this court has been very suspicious of efforts to involve the police in the power of arrest and collecting debts and enforcing purely civil obligations. Such actions take on the appearance of extortion. That is a quote from a case in which both you, Judge Graber and Judge Schroeder, a case called Ping, which both of you sat on the panel. And you recognize that there is this line of cases that says using the police power to enforce civil obligations, a violation of a civil obligation cannot lead to probable cause. You distinguish those cases. Well, let's just use this case. There's a rental agreement. They have permission under that agreement to have the mattress at the location where it was at the rehab facility. And let's say they actually did intend to steal it and just keep it forever and not take it to their mother's house, but go off and sell it. I don't understand how the fact of having initially an agreement means that you can't look beyond that to see what happens afterwards. The fact that you have rented something doesn't mean you can't also steal it. The law does make clear that when it is a civil dispute, that that can amount to probable cause. It would be a different situation if perhaps they did not present that agreement to the officer. But the fact that it is an agreement, the officer is... But the agreement said that the location for it was where it actually was before they put it in the truck. I guess what troubles me about this whole area is that renting something or having a criminal intent with respect to the subject matter of the contract. That might be true in theory. Under the facts of this case, it's pretty clear that when he shows him the contract, the officer has no reasonable basis to deny that it exists, that the obligations are governed by that contract. Now, say if he had rented it... Right, but that helps you only so far because the location listed in that agreement was the rehab facility and not another place. And so... It's just under the law, the existing law of the circuit and long-standing law, the officer shouldn't even be getting into trying to interpret the contract as Judge Lefkoe pointed out. No, but you can't both rely on it and then walk away from it. It seems to me you either have to say, well, the fact that he showed him the contract, we win because it proved that they couldn't have had the intent to take it. But then you're saying, oh, well, no, the police shouldn't actually read it. They shouldn't actually read it. And they would be on notice at that point that it is a civil dispute. That is what the law of the circuit says. And I would like to point out that that's just not a broad general proposition. In the Allen case, they established that in the context of a contract dispute. They established it in the context of a Fourth Amendment false arrest. So is it your position that just because there's a contract covering an object, that it can't possibly be stolen or there can't be probable cause to believe that it is being stolen, notwithstanding the agreement? I would not go quite that far. But I would say that under the facts of this case, where he was presented with the contract and there are no other accompanying allegations of, say, domestic violence, which we found dispositive in Ping, without any further facts of that nature, that brings us squarely with in the law of Allen, of Stevens, of Kennedy, and these other cases that say that if it's a purely civil dispute, it can amount to probable cause. Now you ask me, is it impossible, categorically impossible? I suppose there is a situation that could come up in theory, but that is not the situation in this case. I'm sorry. Go ahead. It seems to me the strongest argument on your opponent's side is that there has been a dispute in the judiciary, or a disagreement in the judiciary, about whether there was probable cause. So what do you make of that argument? Certainly, I do not want to hurt anybody's feelings. But I will point out that we do have this appeals process because occasionally judges do get it wrong. So if a magistrate or a judge in the district court happens to reach an incorrect ruling, that is why we have the appellate court. And there's a panel of three judges, not one, because the majority opinion becomes the ruling. So as I said, I don't want to hurt anybody's feelings or say, but sometimes judges get it wrong. Okay? And the majority opinion is the opinion of the court. And especially with regard to the published cases. So Allen, Stevens, Kennedy, these cases are longstanding law in this court. Since Kennedy established in 1989, 1995 for Allen, Stevens actually used the phrase clearly established law. It said that it's clearly established that civil disputes do not provide probable cause to arrest. So I don't see how it could be any clearer that the law is clearly established, at least on that point. The only real question is whether under the circumstances of this case, the specific facts of this case, did the officers involved realize, were they on notice that it was a civil dispute? Now I would argue that they clearly were because they were shown the contract. You cannot get any clearer than that. They know that the contract is there when they see it. They've been physically presented with it, in addition to being informed about it, and the other facts that they encountered in the course of this investigation. So yes, they would be on notice that it was a civil dispute. Under the law of this circuit, which I see no real reason here to distinguish, other than hypothetical reasons, but no real reason here to distinguish, yeah, the result would be clear. They should be denied qualified ownership. I would also like to point out that under California law, the difference between a civil dispute and a criminal dispute is defined by statute, and it's been there a long time. If the penalty for a violation of the law, for example, is jail time, that would make it a criminal dispute. If it's a dispute between two private parties, for example here, as alleged by Weisinger, Ms. Weisinger, a dispute between Supercare and the Nichols brothers, well, that would be a private dispute in which the remedy would be damages. In other words, it's a contract action, and it's specifically defined so by statute under California law. So in other words, we don't need to get into this philosophical discussion about what's the difference between civil and criminal, because first of all, it's defined by statute, and second of all, it's pretty clear under the facts of this case that it would be a dispute. I mean, if you're presented with the contract, that presents a contract dispute. I have one more question for you, and that in Allen, part of the reason the court found no probable cause was that Joyce Allen was the wife. She had no criminal intent, but because the dispute was between the restaurant manager and her husband, does that make any difference in your case? I would argue that no, it does not make a difference here, because you have, unlike in Allen, you had somebody coming and actually physically presenting the officer with the contract, whereas in Allen, it's a receipt for services at a restaurant for the food. I'd say the facts are more compelling in this case in terms of not being evidence of specific intent. Now, there are other facts. There is the fact that Daniel returned with the mattress. There are the facts that both Raymond and Daniel denied and specifically disputed the allegations that Weisinger had made. But as the district court found correctly, in my opinion, even assuming that the officers could resolve a credibility dispute in favor of Weisinger, all that changed when they were presented with the contract itself. Well, in terms of the credibility dispute, police have to do that all the time. Someone says, that guy just hit me, and he says, no, no, I didn't do a thing. They've got to deal with that all the time, and that doesn't negate probable cause. And sometimes it is a credibility dispute. It's a question of who you believe, but they are not entitled to ignore exculpatory evidence. There are numerous cases that state that repeatedly, especially when they're physically presented with it, as in this case, as in, for example, also the Henderson case. In Thomas v. Dillard, officers are not allowed to cherry-pick facts in order to establish probable cause. In other words, when they're presented with something that is so clear and compelling as to put them on notice that it would be unlawful to arrest the plaintiff in that case, they do not have the choice to just call it a credibility dispute and then arrest the person they simply want to arrest in spite of the law. Thank you. Thank you, Your Honors. You have a couple of minutes remaining. I'm going to try to make five very quick points. The first one, Judge Lefkoe alluded to the fact that several judges have come out differently on this case. And it may be that judges get it wrong sometimes, but police officers are also entitled to get it wrong sometimes. That's the point of qualified immunity. And if a judge could get it wrong, so could a police officer. Secondly, the idea that, again, because there's a lease in the background, there can never be criminal intent. I would say that Wesby, where there was a claim of permission to be on the property and yet there was probable cause to arrest, negates that, as does Bell, where there was an apartment lease and still theft. Number three, there was an allusion to the statement in Stevens that it's clearly established that criminal disputes do not give rise to theft. That's the kind of broad generalization that the Supreme Court says we can't rely on anymore in qualified immunity cases. We're looking at the facts. The facts of Stevens are very different. You asked a question about Joyce in the Allen case. I think that absolutely matters here. Here we have Raymond and Daniel both taking the mattress away, being part of the same plan. So Joyce may not have had the right criminal intent because she was not involved in the dispute here. They were both active in taking the steps that gave rise to probable cause. Can I ask you just one question? I thought at one point this dispute was whether or not they could have this mattress or whether there was going to be another mattress delivered to the house.  Please answer the question. Would you answer the question? Isn't that the case? Not necessarily because, yes, yes, in that the super care did say they would deliver a different mattress to the house. But the plaintiffs here were claiming we had permission to take this mattress. There's the credibility dispute. They're saying we already have permission. And once they're lying about having permission, arguably could find that they were lying about having permission, the police could question what they were going to do with the mattress once they got it. And if there's another mattress being delivered to their house, now they have two mattresses. There's a question about what's going to happen. I see that you're struggling with that. But I would also say that super care owns these mattresses. It can decide. It has the right to decide which mattress it wants. This is an expensive, fancy mattress. This is not a regular, nothing's happened to the mattress. This is a mattress that inflates and deflates to prevent bed sores. It's $3,000. It has a pump attached to it. It may not want people to transport it who don't know how to transport it properly. It may have, you know, rehab facility grade mattresses and home mattresses that we don't know. But they own the property. They are entitled to decide which of their property they want to keep for themselves and which they want out. Thank you, counsel. Thank you. The case just argued is submitted and we will take a break for about 10 minutes. All rise.
judges: Schroeder, Graber, Lefkow